Michael J. Jaurigue, SBN 208123
  michael@jlglawyers.com
Nam H. Le, SBN 260752
  nam@jlglawyers.com
Jaurigue Law Group
114 N. Brand., Suite 310
Glendale, California  91203
Telephone: 818.432.3220
Facsimile:  888.879.1697

Attorneys for Caleb Tector and Stephanie Larson,
Debtors and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re | Case No. **13-20096** |
| | DCN:  JLG-16 |
| Caleb Tector and Stephanie Larson, | Chapter 11 |
| Debtors and Debtors in Possession. | **DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION** |

<u>Disclosure Statement Hearing</u>

**DATE:**  May 28, 2014
**TIME:**  10:00 a.m
**PLACE:**    Courtroom 35
            U.S. Bankruptcy Court
            501 I St., Sixth Floor
            Sacramento, CA 95814

<u>Plan Confirmation Hearing</u>

**DATE:**  October 29, 2014
**TIME:**  10:00 a.m.
**PLACE:**    Courtroom 35
            U.S. Bankruptcy Court
            501 I St., Sixth Floor
            Sacramento, CA 95814

JAURIGUE LAW GROUP
114 N. BRAND BLVD. SUITE 200
GLENDALE, CALIFORNIA 91203
TEL  818.630.7280 • FAX 888.879.1697

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

# I.

## __INTRODUCTION__

Caleb Tector and Stephanie Larson are the debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 bankruptcy case (the "Case"). On January 3, 2013 (the "Petition Date"), the Debtors commenced the Case by filing a voluntary chapter 11 petition under the United States Bankruptcy Code (the "Bankruptcy Code"), 11 U.S.C. § 101, *et seq.* The Debtors continue to operate their business, work at their jobs and manage their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Case.

Chapter 11 allows the Debtors, the creditors, and others parties in interest to propose a plan of reorganization. A plan of reorganization may provide for the Debtors to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. The Debtors are the party proposing the Debtors' Chapter 11 Plan of Reorganization (the "Plan") sent to you in the same envelope as this document. **THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT (the "Disclosure Statement") FOR THE PLAN.** The Disclosure Statement is provided to help you understand the Plan. All terms which are not otherwise defined in the Plan shall have the same meaning as such terms are provided in this Disclosure Statement.

The Plan is a reorganizing plan. Simply put, the Debtors seek to accomplish payments under the Plan by using funds from their jobs and rental income from their real properties.

The effective date of the Plan (the "Effective Date") will be the first day of the first full month which is at least 14 days following entry of the order of the Court confirming the Plan, assuming there has been no appeal from, or order staying the effectiveness of, the Plan confirmation order (the "Confirmation Order"). The Debtors, following the Effective Date, shall be referred to as the "Reorganized Debtors."

A.    **Purpose Of This Document**

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT**:

(1)    **WHO CAN VOTE OR OBJECT;**

(2)    **WHAT THE TREATMENT OF YOUR CLAIM IS (*i.e.*, what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION;**

(3)    **THE HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY;**

(4)    **WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;**

(5)    **WHAT THE EFFECT OF CONFIRMATION IS; AND**

(6)    **WHETHER THE PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own attorney to obtain more specific advice on how the Plan will affect you and what the best course of action for you is.

Be sure to read the Plan as well as this Disclosure Statement. If there are any inconsistencies between the Plan and this Disclosure Statement, the Plan provisions will govern.

The Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plan. The Bankruptcy Court has not yet approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan.

B.    **Deadlines For Voting And Objecting; Date Of Plan Confirmation Hearing**

**THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN**

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

**THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTORS AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.**

### 1. Time And Place Of The Confirmation Hearing

The hearing where the Court will determine whether or not to confirm the Plan will take place on October 29, 2014 at 10:00 a.m., in Courtroom 35 of the United States Bankruptcy Court, located at 501 I Street, Sacramento, CA 95814.

### 2. Deadline For Voting For Or Against The Plan

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot to Michael J. Jaurigue, Jaurigue Law Group, 114 N. Brand Blvd., Suite 200, Glendale, California 91203. Your ballot must be received by 5:00 p.m., Pacific Time, on September 30, 2014 or it will not be counted.

### 3. Deadline For Objecting To The Confirmation Of The Plan

Objections to the confirmation of the Plan must be filed with the Court on September 30, 2014 and served by same day service upon Michael J. Jaurigue, Jaurigue Law Group, 114 N. Brand Blvd., Suite 200, Glendale, California 91203, fax: (888) 879-1697; email: michael@jlglawyers.com.

### 4. Identity Of Person To Contact For More Information Regarding The Plan

Any interested party desiring further information about the Plan should contact Michael J. Jaurigue, Jaurigue Law Group, 114 N. Brand Blvd., Suite 200, Glendale, California 91203, telephone: (818) 432-3220, email: michael@jlglawyers.com.

**C.**     Disclaimer

The financial data relied upon in formulating the Plan is based on the Debtors' books and records which, unless otherwise indicated, are unaudited; appraisals of the real property owned by the Debtors; and financial projections prepared by the Debtors. The information

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

contained in this Disclosure Statement is provided by the Debtors. The Debtors represent that everything stated in this Disclosure Statement is true and correct to the Debtors' best knowledge. The Bankruptcy Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

## II.

## BACKGROUND

What follows is a brief summary of the dates and circumstances that led the Debtors to file their bankruptcy.

### A. The Debtors' Business

Debtor Caleb Tector is an independent Computer Networking Consultant, doing business as Mobile Techie ("Mobile Techie") and Debtor Stephanie Larson is a Middle School Teacher. Together the Debtors are also the owners of a California Corporation, which does business in five locations in California and Colorado, known as Sun Snow Lodging, Inc. ("SunSnow"). SunSnow offers nightly vacation rentals to clientele looking for temporary skiing accommodations during the Winter or hiking and sightseeing accommodations during the Summer. SunSnow offers the following real properties as nightly vacation rentals: (i) 44 Tyrol Lane, Unit 13, Mammoth Lakes, CA 93546; (ii) 203 County Road 838, Unit 15, Fraser, CO 80442; (iii) 201 Juniper Springs Dr., Unit 215, Mammoth Lakes, CA 93546; (iv) 44 Tyrol Lane, Unit 14, Mammoth Lakes, CA 93546. Any profits generated by SunSnow are paid over to the Debtors. On the Petition Date (January 3, 2013), the Debtors owned the following seven (7) parcels of real estate:

### 1. Sunni's Way Property

The real property located at 88 Sunni's Way, Sunny Slopes, CA 93546-9555 (the "Sunni's Way Property") consists of a single residential lot with a single-family, detached house upon it. Ocwen Loan Servicing, LLC, its Assigns and/or Successors in Interest ("Ocwen"), asserts a first priority security interest in the Sunni's Way Property in the amount of approximately $407,985.02. Citibank, NA ("Citibank") asserts a second priority security interest in the Sunni's

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL 818.432.3220 • FAX 888.879.1697

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

Way Property in the amount of approximately $101,494.00. The Debtors purchased this property in April 2005.

The Sunni's Way Property is the Debtors' primary residence.

**2.      Tyrol 213 Property**

The property located at 44 Tyrol Lane, Unit 13, Mammoth Lakes, CA 93546 (the "Tyrol 213 Property") consists of an 875 square foot condominium unit which is currently rented on a nightly basis as a vacation rental. Deutsche Bank National Trust Company, solely as Trustee for New Century Home Equity Loan Trust Series 2004-A Asset Backed Pass-Through Certificates, Series 2004-A ("Deutsche") asserts a first priority security interest in the Tyrol 213 Property in the amount of approximately $248,210.44. JPMorgan Chase Bank, NA, successor in interest from the Federal Deposit Insurance Corporation, as receiver for Washington Mutual Bank f/k/a/ Washington Mutual Bank, F.A., ("Chase") asserts a second priority security interest in the Tyrol 213 Property in the amount of approximately $137,097.00. Debtor Stephanie Larson purchased the Tyrol 213 property in 1991.

**3.      Maple Property**

The real property located at 268 Maple Rd., Thousand Oaks, CA 91320-4720 (the "Maple Property") consists of a single residential lot with a single-family, detached house upon it. The Debtors currently rent the Maple Property out to long term tenants. Bank of America ("BofA") asserts a first priority security interest in the Maple Property in the approximate amount of $429,457.48 and a second priority security interest in the Maple Property in the approximate amount of $157,231.00. Debtor Caleb Tector purchased the Maple Property in February 2003.

**4.      County Road Property**

The real property located at 203 County Road 838, Unit 15, Fraser, CO 80442 (the "County Road Property"), consists of an 802 square foot condominium unit which is currently rented on a nightly basis as a vacation rental. Green Tree Servicing, LLC ("Green Tree") asserts a first priority security interest in the County Road Property in the amount of approximately $87,384.43. Eugene and Jacqueline Larson assert a second priority security interest in the County

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL 818.432.3220 • FAX 888.879.1697

Road Property in the approximate amount of $105,645.00.  Debtors purchased this property in June 2004.

### 5.    Juniper Property

The real property located at 201 Juniper Springs Dr., Unit 215, Mammoth Lakes, CA 93546 (the "Juniper Property") consists of a 529 square foot condominium unit which is currently rented on a nightly basis as a vacation rental.  U.S. Bank National Association, as Trustee, Successor in Interest to Bank of America, National Association as Trustee as successor by merger to LaSalle Bank National Association, as Trustee on behalf of the holders of WaMu Mortgage Pass-Through Certificates, Series 2005-AR15, its assignees and/or successors, by and through its servicing agent Select Portfolio Servicing, Inc. ("U.S. Bank") asserts a first priority security interest in the Juniper Property.  The amount of the first priority security interest is approximately $426,846.66.  Chase asserts a second priority security interest in the Juniper Property.  The amount of the second priority security interest is approximately $43,519.00.  Debtors purchase this property in September of 2005.

### 6.    Ironhorse Property

The property located at 310 Ironhorse, Winter Park, CO 80482 (the "Ironhorse Property") consists of a 774 square foot condominium unit which has been abandoned by the Debtors.  The Bank of New York Mellon f/k/a The Bank of New York as Successor to JP Morgan Chase Bank, N.A., as Trustee for the Holders of Sami II 2006-AR6, MTG Pass-Through Certs, Series 2006-AR6 ("Mellon"), asserts a first priority security interest in the Ironhorse Property in the amount of approximately $296,113.75.  Debtors purchased the Ironhorse Property in May 2006.  Ironhorse Community Association, Inc. ("Ironhorse") asserts a second priority security interest in the Ironhorse Property in the amount of approximately $87,447.50.

### 7.    Tyrol 214 Property

The property located at 44 Tyrol Lane, Unit 14, Mammoth Lakes, CA 93546 (the "Tyrol 214 Property") consists of an 1,100 square foot condominium unit which is currently rented on a nightly basis as a vacation rental.  Chase, asserts a first priority security interest in the Tyrol

214 Property in the amount of approximately $387,325.02.  Debtors purchased the Tyrol 214 property in November of 2006.

### B.    Principals and Affiliates of Debtors' Business

Debtors' income consists of the revenue generated by Debtor Caleb Tector's operation of Mobile Techie and the wages from Debtor Stephanie Larson's position as a Middle School Teacher.  The Debtors also generate revenue through the operation and management of SunSnow which is owned and operated solely by the Debtors.

### C.    Management of the Debtors Before and After Bankruptcy

No persons other than the Debtors have been involved in the management of the Debtors' business operations or financial affairs before the Petition Date and no persons other than the Debtors will be involved in the management of the Debtors' business operation or financial affairs following the Effective Date.

### D.    Events that led up to, and causes, of the filing of this case.

A number of factors led to the Debtors' current bankruptcy filing.  The Debtors filed a prior chapter 11 bankruptcy, case number 10-38738, on July 16, 2010 (the "Prior Case"). The events leading to the filing of the Prior Case are as follows: beginning in 2004, before the collapse of the real estate market and economy, the Debtors sought to enter the nightly vacation rental business by purchasing the County Road Property.  At that time Debtors lived in the Tyrol 213 Property and had successfully rented it out as a nightly vacation rental whenever they chose to go on vacation themselves.  To that end the Debtors took out a second loan on the Tyrol 213 Property and borrowed money from Debtor Stephanie Larson's father and mother in order to put down payments on both the Colrado Property in June of 2004, and the Sunni's Way Property in April of 2005.  Purchasing the Sunni's Way Property allowed the Debtors' to move out of the Tyrol 213 Property, transitioning the Tyrol 213 Property into a full time vacation rental unit. Later in approximately September 2005, Debtors took out a second loan on the Sunni's Way Property in order to help finance the purchase of the Juniper Property, as well as investing in an uncompleted rental condominium project (the "Westin Property").  In approximately May 2006,

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

Debtors took out a second loan on the Juniper Property in order to finance the purchase of the Ironhorse Property.  In November 2006, just before the collapse of the real estate market, Debtors made their final real estate investment by taking a second lien out on the Maple Property and investing in the Tyrol 214 Property.

The subsequent collapse of the real estate market and downturn in the economy had a double impact on the Debtors.  With the real estate market collapse the Debtors were left with properties which were now over encumbered well above their fair market value.  With the downturn in the economy SunSnow, which relied on vacation rental revenue as the source of its profits, saw a precipitous drop in its business as potential clientele chose to cut vacation spending in light of the struggling economy.  Adding to the Debtors financial problems, the Debtors were forced to abandon their investment in the Westin Property as, before completion of the condominium, it was already substantially "underwater."  Debtors lost approximately $55,000 by abandoning the Westin Property project.  Debtors struggled with the loss of the Westin Property and SunSnow's drop in business, cutting expenses where possible and managing other rental units for third parties to generate more revenue.  Furthermore the Debtors attempted to modify several loans on their real properties holdings in an effort to keep pace with their under-secured mortgages.  Debtors loan modification attempts were unsuccessful with the exception of a modification on Ocwen's first priority security interest in the Sunni's Way Property.

Ultimately the Prior Case was unsuccessful in achieving a confirmed Chapter 11 Plan.  The economy had not sufficiently rebounded to allow Debtors investment properties to support themselves and the Debtors were unable to reach agreements with all of their secured lenders in a timely manner.  As a result, the Prior Case was converted to a Chapter 7 bankruptcy and the Debtors received a discharge.  The instant case was filed on January 3, 2013 in an effort to allow the Debtors to restructure their secured debt for the benefit of their estate and first creditors.

**E.    Bankruptcy Proceedings**

The following is a list of significant events which have occurred <u>during</u> this case:

**1.    Employment of Bankruptcy Counsel**

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

The Debtors sought Court authority to employ the Jaurigue Law Group ("JLG") as their bankruptcy counsel. The Debtor's application to employ JLG was approved by the Court on March 18, 2013.

**2.    Administrative Matters**

The Debtors were required to address the various administrative matters attendant to the commencement of their bankruptcy case. These matters included the preparation of Schedules of Assets and Liabilities and a Statement of Financial Affairs, and the preparation of the materials required by the Office of the United States Trustee ("OUST") including, without limitation, the 7-day package. The Debtors have complied with the foregoing obligations. The following is a list of significant events and orders in the current case.

    **a.**    The DIPs filed their voluntary petition for bankruptcy on January 3, 2013;

    **b.**    A Preliminary Chapter 11 Status Conference was held on February 13, 2013.

    **c.**    On April 24, 2013, the Debtors filed a motion to value the Sunni's Way Property. On July 16, 2013, the Court entered an order granting the motion.

    **d.**    On April 24, 2013, the Debtors filed a motion to value the Tyrol 214 Property. On August 16, 2013, the Court entered an order determining the value of the Tyrol 214 Property to be $245,250.00.

    **e.**    On April 24, 2013, the Debtors filed a motion to value the Juniper Springs Property. On August 2, 2013, the Court entered an order denying the motion without prejudice.

    **f.**    On April 24, 2013, the Debtors filed a motion to value the Tyrol 213 Property. On July 16, 2013, the Court entered an order granting the motion.

    **g.**    On May 10, 2013, the Debtors filed a motion to value the Maple

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

Property. On July 16, 2013, the Court entered an order granting the motion.

    **h.**      On May 10, 2013, the Debtors filed a motion to value the County Road Property. On June 22, 2013, the Court entered an order granting the motion.

    **i.**      On October 17, 2013, the Debtors filed an amended motion to value the Juniper Property. On December 17, 2013, Debtors and U.S. Bank entered into a stipulation resolving the motion. On January 30, 2013, the Court entered an order approving the stipulation.

**F.**      **Actual and Projected Recovery of Preferential or Fraudulent Transfers**

At this time, the Debtors are not aware of avoidance claims and causes of action that can be pursued for the benefit of the estate. Notwithstanding the foregoing, the Debtors reserve any and all of their rights to assert and pursue any claims and causes of action pursuant to 11 U.S.C. § 544 et seq. following confirmation of the Plan.

**G.**      **Procedures Implemented to Resolve Financial Problems**

As noted above, DIPs filed a prior bankruptcy in 2010. Although there efforts to confirm a Chapter 11 Plan were ultimately unsuccessful, the prior case did allow them to discharge all of their debt allowing the DIPs to focus solely on efforts to grow and maintain SunSnow. To that end, Debtor Caleb Tector ("Caleb") has focused his attention on the finances of the company and has implemented a new online marketing effort which has shown positive results in growing SunSnow's business. Caleb has devoted more time towards advertising through the SunSnow website and other third party websites, to the point where SunSnow is receiving more unsolicited requests for rental information than ever before. Furthermore, Debtors have introduced a remote locking and unlocking system which facilitates the ability of SunSnow to accommodate last minute rentals in their remote locations, without the inconvenience of delivering physical keys. The remote locking system allows Debtors to effectively manage their properties from anywhere and has increased their rentals by accommodating late and last minute rentals that

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

they would previously have been forced to turn away due to logistics.

As stated earlier, the Debtors continue to market SunSnow's services for managing third party rentals as well. In addition, Debtors were able to cut costs by cleaning their own properties whenever possible, rather than paying a third party cleaning service. The end result of these changes have been increased revenue generated by aggressive marketing and increased ability to accommodate last minute bookings, while lowering costs through Debtors ability to take on more work themselves rather than paying third parties. Based on the foregoing, and the cash flow projections prepared by the Debtors, attached hereto as **Exhibit "A",** the Debtors believe they have a confirmable Plan.

     **H.**      **Summary of Assets and Distributions Under Plan**

The Debtors will modify payments to secured creditors as follows:

     **1.**      **Sunni's Way Property**

In connection with the Debtors' Schedule of Assets and Liabilities, the Debtors valued the Sunni's Way Property at approximately $375,000.00. On July 16, 2013, the Court entered an order valuing the Sunni's Way Property at $350,000.00.

Ocwen asserts a first priority security interest in the Sunni's Way Property in the amount of approximately $407,985.02. In approximately February of 2011, the Debtors modified their loan with Ocwen. Pursuant to that modification are to pay Ocwen $2,032.00 per month for the first 60 months, $2,230.62 for the next 12 months, $2,437.84 for the following 12 months, and $2,624.73 for the remaining 337 months of the mortgage (which includes principal, interest, tax, and insurance) on account of its first priority security interest. The Plan does not propose to alter this arrangement.

Citibank's second priority lien on the Sunni's Way Property, which is asserted in the amount of $101,494.00, is wholly unsecured.

     **2.**      **Tyrol 213 Property**

In connection with the Debtors' Schedule of Assets and Liabilities, the Debtors valued the Tyrol 213 Property at approximately $175,000.00. On July 16, 2013, the Court entered

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

an order valuing the Tyrol 213 Property at $145,000.00.

Based on the fact that Deutsche asserts a first priority security interest in the Tyrol 213 Property in the amount of $248,210.44, pursuant to 11 U.S.C. § 506(a), the secured claim is reduced to $145,000.00 (the value of collateral), with the balance of the claim classified as an unsecured deficiency claim in the amount of $103,210.44. Chase asserts a second priority security interest in the Tyrol 213 Property in the amount of $137,097.00, which is wholly unsecured.

The Debtors and Deutsche entered into a claim treatment stipulation, which was filed with the Court on June 18, 2014, as Document No. 247 (the "Tyrol 213 Stipulation"). The Debtors propose payment to Deutsche over 360 months at an interest rate of 5.00% for a monthly payment of $778.39, in accordance with the terms of the Tyrol 213 Stipulation.

**3.　　Maple Property**

In connection with the Debtors' Schedule of Assets and Liabilities, the Debtors valued the Maple Property at approximately $325,000.00. On July 16, 2013, the Court entered an order valuing the Maple Property at $375,000.00.

BofA asserts a first priority security interest in the Maple Property in the amount of $429,457.48, pursuant to 11 U.S.C. § 506(a), the secured claim is reduced to $375,000.00 (the value of collateral), with the balance of the claim classified as an unsecured deficiency claim in the amount of $54,457.48. Green Tree's second priority lien of in the amount of $157,547.69 is wholly unsecured.

The Debtors and BofA entered into a claim treatment stipulation, which was filed with the Court on August 5, 2014, as Document No. 270 (the "Maple Stipulation"). The Debtors propose payment to BofA over 30 months at an interest rate of 5.25% for a monthly payment of $2,070.76, in accordance with the terms of the Maple Stipulation.

**4.　　County Road Property**

In connection with the Debtors' Schedule of Assets and Liabilities, the Debtors valued the County Road Property at approximately $140,000.00. On July 16, 2013, the Court entered an order valuing the County Road Property at $128,000.00.

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

Green Tree asserts a wholly secured first priority claim of $87,384.43. Eugene and Jaqueline Larson assert a second priority security interest in the County Road Property in the amount of $100,000.00, pursuant to 11 U.S.C. § 506(a), the secured claim is reduced to $40,615.57 (the value of the collateral at $128,000.00 less the $87,384.43 first priority secured claim of Green Tree), with the balance of the claim classified as an unsecured deficiency claim in the amount of $59,384.43.

The Debtors propose payment to Green Tree over a thirty year period at an interest rate of 4.25% for a monthly payment of $429.88 commencing on the Effective Date of the Plan. The Debtors proposes a balloon payment to Eugene and Jacqueline Larson on July 1, 2014 of any outstanding balance on Eugene and Jacqueline Larson's claim with interest accruing at 4.25% until such date.

**5.      Juniper Property**

In connection with the Debtors' Schedule of Assets and Liabilities, the Debtors valued the Juniper Property at approximately $200,000.00. On December 17, 2013, the Debtors and U.S. Bank entered into a stipulation valuing the Juniper Property at $260,000.00. On January 30, 2014, the Court entered an order approving the stipulation.

Based on the terms of the stipulation U.S. Bank shall have a first priority security interest in the Juniper Property in the amount of $260,000.00. Consequently, the remaining balance of U.S. Bank's claim shall be classified as an unsecured deficiency claim in the amount of $166,846.66. Chase's second priority lien in the amount of $43,519.00 is wholly unsecured.

The Debtors and U.S. Bank entered into a subsequent claim treatment stipulation, which was filed with the Court on June 20, 2014, as Document No. 256 (the "Juniper Stipulation"). The Debtors propose payment to U.S. Bank over 480 months at an interest rate of 5.25% for a monthly payment of $1,294.06, in accordance with the terms of the Tyrol 213 Stipulation.

**6.      Ironhorse Property**

Debtors' intend to surrender the Ironhorse Property. Upon Debtors' surrender of

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

the Ironhorse Property, Mellon and Ironhorse shall be free to pursue their State law rights in the Ironhorse Property on, or after, the Effective Date of the Plan without further order of this Court.

### 7. Tyrol 214 Property

In connection with the Debtors' Schedule of Assets and Liabilities, the Debtors valued the Tyrol 214 Property at approximately $200,000.00. On August 16, 2013, the Court entered an order valuing the Tyrol 214 Property at $245,250.00.

Chase asserts a first priority security interest in the Tyrol 214 Property in the amount of $387,325.02. Debtors and Chase have entered into a stipulation attached hereto as **Exhibit "B."** The treatment of Chase's claim and terms attendant thereto are set forth in this stipulation. Based on the terms of the stipulation, Chase shall have a secured claim in the amount of $245,250.00 amortized over a thirty year period at 5.25% interest per annum for a monthly payment of $1,354.28. Chase shall have an unsecured claim in the amount of approximately $142,075.02.

### III.

### SUMMARY OF THE PLAN

### A. What Creditors And Interest Holders Will Receive Under The Plan

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

### B. Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtors have not placed the following claims in a class:

### 1. Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Case that are allowed under Bankruptcy Code section 507(a)(2). The Bankruptcy Code requires that all

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

administrative claims be paid on the Effective Date unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of Debtors' estimated section 507(a)(2) Administrative Claims and their treatment under the Plan:

| Name | Code § | Allowed to Date | Total Estimated[1] | Paid By Debtor to Date | Total Est. to Be Paid on the Effective Date | Treatment |
|------|--------|-----------------|--------------------|------------------------|---------------------------------------------|-----------|
| **Clerk's Office Fees** | | | | | $0.00 | Paid in full on the Effective Date |
| **Office of the U.S. Trustee Fees** | | | | | $0.00 | Paid in full on the Effective Date |
| **Jaurigue Law Group, general counsel for Debtor** | 507(a)(2) | $0.00 | $28,500.00 | $1,052.00 (Retainer) | $40,000.00 | In the event that there are unpaid fees and expenses that are allowed by the Court, unless otherwise agreed, the unpaid amounts shall be paid in full, in Cash, on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order. |
| **Administrative Tax Claims** | 507(a)(1) | $0.00 | $8,047.30 | $0.00 | $8,047.30 | |

### 2.    Court Approval Of Fees Required

The Court must rule on all fees listed in this chart before the fees will be owed, except for fees owing to the Clerk's Office and U.S. Trustee or fees to be paid from non-debtor sources. The Professional in question must file and serve a properly noticed fee application, and the Court must rule on the application. Only the amount of fees and expenses allowed by the Court will be owed and required to be paid under the Plan.

As indicated above, the Debtors estimate that they will be required to make $48,047.30 in payments on account of administrative claims on the Effective Date. The Debtors will have sufficient funds on hand to make such payments.

### 3.    Priority Tax Claims

---

[1] All Professional fees are subject to allowance by Order of the Bankruptcy Court.

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

Priority tax claims are certain unsecured income, employment, property and other taxes described by Bankruptcy Code section 507(a)(8). The Bankruptcy Code requires that each holder of such a section 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five (5) years from the Petition Date.

The following chart lists <u>all</u> of Debtors' estimated priority tax claims and their treatment under the Plan:

| Description (Name and Type of Tax) | Est. Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| **Grand County Treasurer (Property Taxes)** | $1,589.92 | 1/29/2013 | Debtors shall make forty-two (42) monthly payments in the amount of $37.86 beginning July 1, 2014, and ending December 1, 2017, for total payments of $1,590.12. |
| **Internal Revenue Service** | $453.86 | 3/25/2014 | Debtors shall make a payment in the amount of $453.86 on the Effective Date of the Plan in full satisfaction of the Internal Revenue Service's priority tax claim. |

**C.    Classified Claims And Interests**

**1.    Classes Of Secured Claims**

Secured Claims are claims secured by liens on property of the estate. Each secured claim for each Property is given its separate class. Creditors with second liens on particular properties identified in these classes which are liens wholly unsecured are not treated in these classes—instead, the claims of those creditors are addressed in Class 11, specifically 11-B, 11-C, 11-D, 11-E, 11-F and 10-G. The following chart lists the ten classes containing the Debtors' secured pre-petition claims and their treatment under the Plan:

| Class No. | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
| 1 | <u>Secured Claim of</u>: Ocwen Loan Servicing, LLC ("Ocwen")<br><br><u>Collateral description</u>: Sunni's Way Property<br><br><u>Claim Priority</u>: First priority deed of trust<br><br><u>Collateral Value</u>: $350,000.00<br><br><u>Claim Amount</u>: | No | No<br><br>The Claimant in this Class is Not entitled to vote on the Plan. | The Debtors shall assume the mortgage and continue to pay it according to the terms and conditions of the loan documents related to this loan. The Debtors' current monthly payment to Ocwen on account of its first priority deed of trust is $2,032.00, which includes principal, interest, tax, and insurance. In accordance with the terms of the loan modification, the monthly payment will increase to $2,230.62 on February 1, 2016, $2,437.84 on February 1, 2017, and $2,624.73 on February 1, 2018 for the remaining 337 months of the mortgage.<br><br>Pending completion of these payments, the Class 1 |

JAURIGUE LAW GROUP<br>114 N. BRAND BLVD., SUITE 200<br>GLENDALE, CALIFORNIA 91203<br>TEL. 818.432.3220 • FAX 888.879.1697

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

| Class No. | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
| | $407,985.02 | | | claimant shall retain its lien on the collateral. |
| | | | | The treatment of the holder of the class 1 allowed claim described in the Plan shall be in full settlement and satisfaction of all Class 1 allowed claims. |
| 2 | Secured Claim of: Deutsche Bank National Trust Company Solely as Trustee for New Century Home Equity Loan Trust Series 2004-A Asset Backed Pass-Through Certificates, Series 2004-A ("Deutsche Bank")<br><br>Collateral description: Tyrol 213 Property<br><br>Claim Priority: First priority deed of trust<br><br>Collateral Value: $145,000.00<br><br>Claim Amount: $248,210.44 ($145,000.00 secured and $103,210.44 unsecured upon confirmation pursuant to the terms of the stipulation entered into between Debtors and Deutsche Bank (the "Tyrol 213 Stipulation") | No | Yes<br><br>The Claimant in this Class is entitled to vote on the Plan. | The existing Deutsche Bank security documents shall be modified as follows:<br><br>To the extent the claim of Deutsche Bank becomes an Allowed Secured Claim, such claim will be treated in accordance with the terms of the stipulation entered into between Debtors and Deutsche Bank (the "Tyrol 213 Stipulation").<br><br>Pursuant to the terms of the Tyrol 213 Stipulation:<br><br>Commencing July 1, 2014, and continuing to June 1, 2044, Debtors shall tender monthly principal and interest payments to Deutsche Bank in the amount of $778.39, representing payment on Deutsche Bank's secured claim at a 5.00% fixed interest rate amortized over a 360 month schedule.<br><br>In addition to principal and interest payments to Deutsche Bank described above, Debtors shall tender monthly escrow payments to Deutsche Bank for real property taxes and/or real property hazard insurance. The current monthly escrow payment is $103.18 but is subject to change. Debtors must obtain Creditors' express written consent if they wish to de-escrow the account.<br><br>In the event of any future default on payments and/or maintenance of real property taxes and real property hazard insurance, Deutsche Bank shall provide written notice via first class mail to Debtors and Debtors' attorney of record indicating the nature of default. If Debtors fail to cure the default after passage of thirty (30) calendar days from the date written notice is placed in the mail, Deutsche Bank may file a Motion for Relief and Declaration of Default seeking termination of the automatic stay.<br><br>Pending completion of the plan payments, Detusche Bank shall retain its lien on the collateral.<br><br>The treatment of Deutsche Bank described in the Plan shall be in full settlement and satisfaction of all Deutsche Bank allowed claims.<br><br>Pursuant to its terms, the Tyrol 213 Stipulation shall constitute ballots voting in favor of the Plan. |
| 3 | Secured Claim of: Bank of America, N.A. ("BofA")<br><br>Collateral description: 268 Maple Rd., Thousand Oaks, CA 91320-4720 (the "Maple Property")<br><br>Claim Priority: First priority deed of trust<br><br>Collateral Value: $375,000.00<br><br>Approximate Claim Amount: $429,457.48 ($375,000.00 secured and $54,457.48 unsecured upon confirmation pursuant to the terms of the stipulation entered into | No | Yes<br><br>The Claimant in this Class is entitled to vote on the Plan. | The existing BofA security documents shall be modified as follows:<br><br>To the extent the claim of BofA becomes an Allowed Secured Claim, such claim will be treated in accordance with the terms of the stipulation entered into between Debtors and BofA (the "Maple Stipulation").<br><br>Pursuant to the terms of the Maple Stipulation:<br><br>Commencing October 1, 2014, and continuing to September 1, 2044, Debtors shall tender monthly principal and interest payments to BofA in the amount of $2,070.76, representing payment on BofA's secured claim at a 5.25% fixed interest rate amortized over a 360 month schedule.<br><br>In addition to principal and interest payments to |

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

| Class No. | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
| | between Debtors and BofA (the "Maple Stipulation") | | | BofA described above, Debtors shall tender monthly escrow payments to BofA for real property taxes and/or real property hazard insurance. The current monthly escrow payment is $314.26 but is subject to change. |
| | | | | In the event of any future default on payments and/or maintenance of real property taxes and real property hazard insurance, BofA shall provide written notice via first class mail to Debtors and Debtors' attorney of record indicating the nature of default. If Debtors fail to cure the default after passage of thirty (30) calendar days from the date written notice is placed in the mail, BofA may file a Motion for Relief and Declaration of Default seeking termination of the automatic stay. |
| | | | | Pending completion of the plan payments, BofA shall retain its lien on the collateral. |
| | | | | The treatment of BofA described in the Plan shall be in full settlement and satisfaction of all BofA allowed claims. |
| | | | | Pursuant to its terms, the Maple Stipulation shall constitute ballots voting in favor of the Plan. |
| 4 | Secured Claim of: Green Tree Servicing, LLC ("Green Tree")<br><br>Collateral description: County Road Property<br><br>Claim Priority: First priority deed of trust<br><br>Collateral Value= $128,000.00<br><br>Claim Amount= $87,384.43 | No | Yes<br><br>The Claimant in this Class is entitled to vote on the Plan. | The existing Green Tree security documents shall be modified as follows:<br><br>To the extent the claim of Green Tree becomes an Allowed Secured Claim, such claim will be treated as follows:<br><br>From the Effective Date through July 1, 2044 or until the Loan is paid in full, Debtors shall make monthly payments at 4.25% to Green Tree in the amount of $429.88.<br><br>Pending completion of the plan payments, Class 4 claimant shall retain its lien on the collateral.<br><br>The treatment of holder of class 4 allowed claim described in the Plan shall be in full settlement and satisfaction of all Class 4 allowed claims.<br><br>If the Class 4 claimant does not consent to the treatment provided for herein, the Debtors will cramdown the treatment to the secured portion of the Class 4 creditor's claim under the provisions of Section 1129(b)(2)(A) of the Code). |
| 5 | Secured Claim of: Eugene and Jaqueline Larson<br><br>Collateral description: County Road Property<br><br>Claim Priority: Second priority lien<br><br>Collateral Value= $128,000.00<br><br>Claim Amount= $100,000.00 ($40,615.57 secured and $59,384.43 general unsecured deficiency claim- see Class 11-D for treatment of unsecured deficiency claim) | Yes | Yes<br><br>The Claimant in this Class is entitled to vote on the Plan. | The existing security documents of Eugene and Jaqueline Larson's shall be modified as follows:<br><br>To the extent the claim of Eugene and Jaqueline Larson's becomes an Allowed Secured Claim, such claim will be treated as follows:<br><br>Class 5 claimant shall retain its lien on the collateral and shall be entitled to a balloon payment on July 1, 2044 of any outstanding balance on the loan. Interest on the principal shall accrue at 4.25%.<br><br>The treatment of holder of class 5 allowed claim described in the Plan shall be in full settlement and satisfaction of all Class 5 allowed claims.<br><br>If the Class 5 claimant does not consent to the treatment provided for herein, the Debtors will cramdown the treatment to the secured portion of the Class 5 creditor's claim under the provisions of Section 1129(b)(2)(A) of the Code). |

| Class No. | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
| 6 | Secured Claim of:<br>U.S. Bank, N.A., as Trustee, Successor in Interest to Bank of America, N.A., as Trustee, as successor to LaSalle Bank N.A., as Trustee, on behalf of the holders of WaMu Mortgage Pass-Through Certs, Series 2005-AR15, its assignees and/or successors, by and through its servicing agent Select Portfolio Servicing, Inc. ("U.S. Bank")<br><br>Collateral description:<br>201 Juniper Springs Dr., Unit 215, Mammoth Lakes, CA 93546 (the "Juniper Property")<br><br>Claim Priority:<br>First priority deed of trust<br><br>Collateral Value:<br>$260,000.00<br><br>Approximate Claim Amount:<br>$426,846.66 ($260,000.00 secured and $166,846.66 unsecured upon confirmation pursuant to the terms of the stipulation entered into between Debtors and U.S. Bank (the "Juniper Stipulation") and filed on June 18, 2014, as Document No. 247. | No | Yes<br><br>The Claimant in this Class is entitled to vote on the Plan. | The existing U.S. Bank security documents shall be modified as follows:<br><br>To the extent the claim of U.S. Bank becomes an Allowed Secured Claim, such claim will be treated in accordance with the terms of the stipulation entered into between Debtors and U.S. Bank (the "Juniper Stipulation") and filed on June 18, 2014, as Document No. 247.<br><br>Pursuant to the terms of the Juniper Stipulation:<br><br>Commencing August 1, 2014, and continuing to the maturity date of June 1, 2036, Debtors shall tender monthly principal and interest payments to U.S. Bank in the amount of $1,294.06, representing payment on U.S. Bank's secured claim at a 5.25% fixed interest rate amortized over a 480 month schedule.  On the maturity date of June 1, 2036, all outstanding amounts owing on the loan will be due.<br><br>Debtors will be responsible for maintenance of taxes and insurance for the Juniper Property directly.  If Debtors default on maintaining taxes and/or insurance, U.S. Bank may advance funds as described in the original deed of trust and note and impound the account to collect escrow advances and maintaining escrow account for future disbursements.<br><br>Pending completion of the plan payments, U.S. Bank shall retain its lien on the collateral.<br><br>The treatment of U.S. Bank described in the Plan shall be in full settlement and satisfaction of all U.S. Bank allowed claims.<br><br>Pursuant to its terms, the Juniper Stipulation shall constitute ballots voting in favor of the Plan. |
| 7 | Secured Claim of:<br>The Bank of New York Mellon f/k/a The Bank of New York as Successor to JP Morgan Chase Bank, N.A., as Trustee for the Holders of Sami II 2006-AR6, MTG Pass-Through Certs, Series 2006-AR6<br><br>Collateral description:<br>Ironhorse Property<br><br>Claim Priority:<br>First Priority deed of trust<br><br>Collateral Value:  $250,000.00<br><br>Claim Amount:  $296,113.75 | No | No | Debtors intend to surrender this property.  Upon Debtors' surrender of the Ironhorse Property, Mellon shall be free to pursue its State law rights in the Ironhorse Property on, or after, the Effective Date of the Plan without further order of this Court. |
| 8 | Secured Claim of:<br>Ironhorse Condominiums Association, Inc. ("Ironhorse")<br><br>Collateral description:<br>Ironhorse Property<br><br>Claim Priority:<br>Second Priority judgment lien<br><br>Claim Amount:  $87,447.50 | No | No | Debtors intend to surrender this property.  Upon Debtors' surrender of the Ironhorse Property, Ironhorse shall be free to pursue its State law rights in the Ironhorse Property on, or after, the Effective Date of the Plan without further order of this Court. |
| 9 | Secured Claim of: | No | Yes | The existing Chase Security Documents shall be |

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

| Class No. | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
| | JPMorgan Chase Bank, National Association ("Chase")<br><br>Collateral description:<br>Tyrol 214 Property<br><br>Claim Priority:<br>First Priority deed of trust<br><br>Collateral Value: $245,250.00<br><br>Claim Amount: $387,325.02 ($245,250.00 secured and $142,075.02 general unsecured deficiency claim- see Class 11-F for treatment of unsecured deficiency claim) | | The Claimant in this Class is entitled to vote on the Plan. | modified as follows:<br><br>To the extent the claim of Chase becomes an Allowed Secured Claim, such claim will be treated as follows:<br><br>From the November 1, 2013 through October 1, 2043 or until the Loan is paid in full, Debtors shall make monthly payments of $1,354.28 and shall abide by the term contained in the stipulation entered into by the Debtors and Chase, a copy of which is attached to the Disclosure Statement as Exhibit "B."<br><br>Pending completion of the plan payments, Class 9 claimant shall retain its lien on the collateral.<br><br>If the Class 9 claimant does not consent to the treatment provided for herein, the Debtors will cramdown the treatment to the secured portion of the Class 9 creditor's claim under the provisions of Section 1129(b)(2)(A) of the Code.<br><br>The treatment of holder of class 9 allowed claim described in the Plan shall be in full settlement and satisfaction of all Class 9 allowed claims. |
| 10 | Secured Claim of :<br>Schools Federal Credit Union ("Schools FCU")<br><br>Collateral description:<br>2011 Volkswagen Jetta<br><br>Collateral Value: $17,750.00<br><br>Claim Amount: Approx. $17,750.00 | No | Yes<br><br>The Claimant in this Class is entitled to vote on the Plan. | To the extent the claim of Schools FCU becomes an Allowed Secured Claim, such claim will be treated as follows:<br><br>From the Effective Date through July 1, 2044 or until the Loan is paid in full, Debtors shall make monthly payments of $328.90.<br><br>Pending completion of the plan payments, Class 10 claimant shall retain its lien on the collateral.<br><br>If the Class 10 claimant does not consent to the treatment provided for herein, the Debtors will cramdown the treatment to the secured portion of the Class 10 creditor's claim under the provisions of Section 1129(b)(2)(A) of the Code.<br><br>The treatment of holder of Class 10 allowed claim described in the Plan shall be in full settlement and satisfaction of all Class 10 allowed claims. |

## 2. Classes Of Priority Unsecured Claims

Certain Priority Claims that are referred to in Bankruptcy Code sections 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) are required to be placed in classes. These types of Claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such Claims. The Debtors are not aware of any claims that would qualify as 11 U.S.C. §§ 507(a)(3), (a)(4), (a)(5), (a)(6) and (a)(7) Priority

JAURIGUE LAW GROUP<br>114 N. BRAND BLVD., SUITE 200<br>GLENDALE, CALIFORNIA 91203<br>TEL. 818.432.3220 • FAX 888.879.1697

1  Unsecured Claims under the Plan.

2  **3.      Class Of General Unsecured Claims**

3  All of the Debtors' general unsecured claims are treated in Class 11.  General

4  unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code section

5  507(a).  A schedule of the foregoing claims is attached to the Disclosure Statement as **Exhibit**

6  **"C".**  The following chart identifies the Plan's treatment of the class containing <u>all</u> of the Debtors'

7  general unsecured claims.  Creditors who possess unsecured deficiency claims are separately

8  identified within this class.  Debtors' net disposable income, as projected in **Exhibit "A",** will be

9  distributed to Class 11 General Unsecured creditors.  Additionally, if the combined quarterly net

10  income of Debtors exceeds the projections set forth in **Exhibit "A"**, the amount which exceeds

11  the Debtors' projections will be distributed to Class 11 creditors on a pro-rata basis within 30 days

12  after the end of such quarter.

| Class No. | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
| 11-A | General unsecured claims (not including deficiency claims)<br><br>Total amount of claims = approximately $596,888.69 | No | Yes<br><br>The Claimant in this Class is entitled to vote on the Plan. | Holders of Class 11-A allowed claims will be paid on a pro rata basis with other holders of Class 11 claims a total of $13,204.80, which will be paid in monthly installments over a five year period commencing on the Effective Date, with fourteen (14) installments of $489.78 until February 1, 2016, twelve (12) installments of $291.16 until February 1, 2017, and thirty-four (34) installments of $83.94 from February 1, 2017 on, in accordance with the projections set forth in Exhibit "A" to the Disclosure Statement.<br><br>Additionally, if the combined quarterly net income of Debtors exceeds the projections set forth in Exhibit "A", the amount which exceeds the Debtors' projections will be distributed to Class 11 creditors on a pro-rata basis within 30 days after the end of such quarter.<br><br>Based on the figures set forth above, the Debtors estimate that there will be at least $13,204.80 distributed to holders of Class 11 allowed claims.  The Debtors estimate that each holder of a Class 11-A allowed claim will receive at least 1.2% of the amount of its Class 11-A allowed claim out of the proposed funds.<br><br>The treatment of holders of Class 11-A allowed claims described in the Plan shall be in full settlement and satisfaction of all Class 11-A allowed claims.<br><br>If the creditors in Class 11 do not consent to the treatment provided for herein, the Debtors will cramdown the creditors' claim under the provisions of Section 1129(b)(2)(A) of the Code. |
| 11-B | Deficiency claim of Deutsche<br><br><u>Relates to interest in:</u><br>Tyrol 213 Property (see description in Class 2, above):<br><br>Amount of Unsecured Deficiency | No | Yes<br><br>The Claimant in this Class is entitled to vote on the Plan. | Pursuant to 11 U.S.C. §506(a), Deutsche possesses a secured claim in the amount of $145,000.00 (which is treated above in Class 2) and an unsecured deficiency claim in the amount of $103,210.44, which is treated in this Class 11-B. |

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

| Class No. | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
| | Claim : $103,210.44 | | | On account of its claim, Deutsche will be paid on a pro rata basis with other holders of Class 11 claims a total of $13,204.80, which will be paid in monthly installments over a five year period commencing on the Effective Date, with fourteen (14) installments of $489.78 until February 1, 2016, twelve (12) installments of $291.16 until February 1, 2017, and thirty-four (34) installments of $83.94 from February 1, 2017 on, in accordance with the projections set forth in Exhibit "A" to the Disclosure Statement.

Additionally, if the combined quarterly net income of Debtors exceeds the projections set forth in Exhibit "A", the amount which exceeds the Debtors' projections will be distributed to Class 11 creditors on a pro-rata basis within 30 days after the end of such quarter.

Based on the figures set forth above, the Debtors estimate that there will be at least $13,204.80 distributed to holders of Class 11 allowed claims. The Debtors estimate that Deustche will receive at least 1.2% of the amount of its Class 11-B allowed claim out of the proposed funds.

The treatment of holders of Class 11-B allowed claims described in the Plan shall be in full settlement and satisfaction of all Class 11-B allowed claims.

If the creditors in Class 11 do not consent to the treatment provided for herein, the Debtors will cramdown the creditors' claims under the provisions of Section 1129(b)(2)(A) of the Code. |
| 11-C | Deficiency claim of BofA

Relates to interest in:
Maple Property (see description in Class 3, above):

Amount of Unsecured Deficiency Claim: $54,457.48 | No | Yes

The Claimant in this Class is entitled to vote on the Plan. | Pursuant to 11 U.S.C. §506(a), BofA possesses a secured claim in the amount of $375,000.00 (which is treated above in Class 3) and an unsecured deficiency claim in the amount of $54,475.48, which is treated in this Class 11-C.

On account of its claim, BofA will be paid on a pro rata basis with other holders of Class 11 claims a total of $13,204.80, which will be paid in monthly installments over a five year period commencing on the Effective Date, with fourteen (14) installments of $489.78 until February 1, 2016, twelve (12) installments of $291.16 until February 1, 2017, and thirty-four (34) installments of $83.94 from February 1, 2017 on, in accordance with the projections set forth in Exhibit "A" to the Disclosure Statement.

Additionally, if the combined quarterly net income of Debtors exceeds the projections set forth in Exhibit "A", the amount which exceeds the Debtors' projections will be distributed to Class 11 creditors on a pro-rata basis within 30 days after the end of such quarter.

Based on the figures set forth above, the Debtors estimate that there will be at least $13,204.80 distributed to holders of Class 11 allowed claims. The Debtors estimate that BofA will receive at least 1.2% of the amount of its Class 11-C claim out of the proposed funds.

The treatment of holders of Class 11-C allowed claims described in the Plan shall be in full settlement and satisfaction of all Class 11-C allowed claims.

If the creditors in Class 11 do not consent to the treatment provided for herein, the Debtors will cramdown the creditors' claims under the provisions of Section 1129(b)(2)(A) of the Code. |
| 11-D | Deficiency claim of Eugene and | Yes | Yes | Pursuant to 11 U.S.C. §506(a), Eugene and Jacqueline Larson possess a secured claim in the amount of |

JAURIGUE LAW GROUP
114 N. BRAND BLVD. SUITE 200
GLENDALE, CALIFORNIA 91203
TEL: 818.432.3220 • FAX 888.879.1697

| Class No. | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
|  | Jaqueline Larson<br><br>Relates to interest in:<br>County Road Property (see description in Class 5, above)<br><br>Amount of Unsecured Deficiency Claim: $59,384.43 |  | The Claimant in this Class is entitled to vote on the Plan. | $40,615.57 (which is treated above in Class 5) and an unsecured deficiency claim in the amount of $59,384.43, which is treated in this Class 11-D.<br><br>On account of their claim, Eugene and Jaqueline Larson will be paid on a pro rata basis with other holders of Class 11 claims a total of $13,204.80, which will be paid in monthly installments over a five year period commencing on the Effective Date, with fourteen (14) installments of $489.78 until February 1, 2016, twelve (12) installments of $291.16 until February 1, 2017, and thirty-four (34) installments of $83.94 from February 1, 2017 on, in accordance with the projections set forth in Exhibit "A" to the Disclosure Statement.<br><br>Additionally, if the combined quarterly net income of Debtors exceeds the projections set forth in Exhibit "A", the amount which exceeds the Debtors' projections will be distributed to Class 11 creditors on a pro-rata basis within 30 days after the end of such quarter.<br><br>Based on the figures set forth above, the Debtors estimate that there will be at least $13,204.80 distributed to holders of Class 11 allowed claims. The Debtors estimate that Eugene and Jaqueline Larson will receive at least 1.2% of the amount of its Class 11-D claim out of the proposed funds.<br><br>The treatment of holders of Class 11-D allowed claims described in the Plan shall be in full settlement and satisfaction of all Class 11-D allowed claims.<br><br>If the creditors in Class 11 do not consent to the treatment provided for herein, the Debtors will cramdown the creditors' claims under the provisions of Section 1129(b)(2)(A) of the Code. |
| 11-E | Deficiency claim of U.S. Bank<br><br>Relates to interest in:<br>Juniper Property (see description in Class 6, above)<br><br>Amount of Unsecured Deficiency Claim: $166,846.66 | No | Yes<br><br>The Claimant in this Class is entitled to vote on the Plan. | Pursuant to 11 U.S.C. §506(a), U.S. Bank possesses a secured claim in the amount of $260,000.00 (which is treated above in Class 6) and an unsecured deficiency claim in the amount of $166,846.66, which is treated in this Class 11-E.<br><br>On account of its claim, U.S. Bank will be paid on a pro rata basis with other holders of Class 11 claims a total of $13,204.80, which will be paid in monthly installments over a five year period commencing on the Effective Date, with fourteen (14) installments of $489.78 until February 1, 2016, twelve (12) installments of $291.16 until February 1, 2017, and thirty-four (34) installments of $83.94 from February 1, 2017 on, in accordance with the projections set forth in Exhibit "A" to the Disclosure Statement.<br><br>Additionally, if the combined quarterly net income of Debtors exceeds the projections set forth in Exhibit "A", the amount which exceeds the Debtors' projections will be distributed to Class 11 creditors on a pro-rata basis within 30 days after the end of such quarter.<br><br>Based on the figures set forth above, the Debtors estimate that there will be at least $13,204.80 distributed to holders of Class 11 allowed claims. The Debtors estimate that U.S. Bank will receive at least 1.2% of the amount of its Class 11-E claim out of the proposed funds.<br><br>The treatment of holders of Class 11-E allowed claims described in the Plan shall be in full settlement and satisfaction of all Class 11-E allowed claims.<br><br>If the creditors in Class 11 do not consent to the treatment provided for herein, the Debtors will cramdown creditors' claims under the provisions of Section |

| Class No. | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
| | | | | 1129(b)(2)(A) of the Code. |
| 11-F | Deficiency claim of Chase<br><br>Relates to interest in:<br>Tyrol 214 Property (see description in Class 8, above)<br><br>Amount of Unsecured Deficiency Claim : $142,075.02 | No | Yes<br><br>The Claimant in this Class is entitled to vote on the Plan. | Pursuant to 11 U.S.C. §506(a), Chase possesses a secured claim in the amount of $242,250.00 (which is treated above in Class 8) and an unsecured deficiency claim in the amount of $142,075.02, which is treated in this Class 11-F.<br><br>On account of its claim, Chase will be paid on a pro rata basis with other holders of Class 11 claims a total of $13,204.80, which will be paid in monthly installments over a five year period commencing on the Effective Date, with fourteen (14) installments of $489.78 until February 1, 2016, twelve (12) installments of $291.16 until February 1, 2017, and thirty-four (34) installments of $83.94 from February 1, 2017 on, in accordance with the projections set forth in Exhibit "A" to the Disclosure Statement.<br><br>Additionally, if the combined quarterly net income of Debtors exceeds the projections set forth in Exhibit "A", the amount which exceeds the Debtors' projections will be distributed to Class 11 creditors on a pro-rata basis within 30 days after the end of such quarter.<br><br>Based on the figures set forth above, the Debtors estimate that there will be at least $13,204.80 distributed to holders of Class 11 allowed claims. The Debtors estimate that Chase will receive at least 1.2% of the amount of its Class 11-F claim out of the proposed funds.<br><br>The treatment of holders of Class 11-F allowed claims described in the Plan shall be in full settlement and satisfaction of all Class 11-F allowed claims.<br><br>If the creditors in Class 11 do not consent to the treatment provided for herein, the Debtors will cramdown the creditors' claims under the provisions of Section 1129(b)(2)(A) of the Code. |

### 4. Interest Holders

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtors. The Debtors are individuals and therefore the only interest holders.

### D. Means Of Effectuating The Plan

#### 1. Funding For The Plan

The Plan will be funded by income from operations of SunSnow Lodging, Mobile Techie and Debtor Stephanie Larson' wages as provided in **Exhibit "A"** hereto.

#### 2. Composition of the Reorganized Debtors and Post-Confirmation Management

The Reorganized Debtors shall remain individuals. The Reorganized Debtors shall be the persons responsible for managing their financial affairs.

#### 3. Disbursing Agent

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

The Reorganized Debtors shall act as disbursing agents for purposes of making all distributions provided for under the Plan. The Reorganized Debtors shall serve without bond and shall receive no compensation for distribution services rendered and expenses incurred pursuant to the Plan.

### 4.    Objection to Claims

The Debtors or the Reorganized Debtors, as the case may be, and any party in interest may review all claims filed or deemed filed and may object to or seek subordination of any claim filed or scheduled in this Case. The deadline to file objections to claims shall be 120 days after the Effective Date. As provided by Section 502(c) of the Bankruptcy Code, the Court may estimate any contingent, unliquidated, or disputed claim for purposes of confirmation of the Plan. The Court shall retain jurisdiction over the Debtors, the Reorganized Debtors and the Case to resolve such objections to claims following the confirmation of the Plan, if necessary.

Nothing contained in the Plan shall constitute a waiver or release by the Debtors of any rights of setoff or recoupment, or of any defense, they may have with respect to any claim. The Reorganized Debtors will withhold from property to be distributed under the plan and will place in reserve a sufficient amount of cash to be distributed on account of claims that are disputed and have not been allowed as of the date of distribution to creditors ("Disputed Claims") of any particular class as if such claims were allowed in full.

### 5.    Interest Pending Allowance of Claims

Except as specifically provided for in the Plan, in the order confirming the Plan, or in some other order of the Court, interest shall not accrue on claims and no holder of a claim shall be entitled to interest accruing on or after the Petition Date on any claim.

To the extent the Debtors or any party in interest objects to the allowance of any claim, nothing in the Plan or herein shall be deemed to imply or create for the holders of any Disputed Claims any entitlement to receive interest upon the allowed amount of any such Disputed Claims as a result, *inter alia*, of the delay in payment of such claims.

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

6. **Distributions to be Made Pursuant to the Plan**

Distributions to be made by the Reorganized Debtors on the Effective Date on account of any claim shall be made on the Effective Date or as promptly thereafter as practicable. Distributions to be made by the Reorganized Debtors under the plan shall be made by check drawn on a domestic bank or by wire transfer, at the sole election of the Reorganized Debtors.

Except as otherwise agreed to by the Reorganized Debtors in writing, distributions to be made to holders of allowed claims pursuant to the Plan may be delivered by regular first-class mail, postage prepaid, to the address shown in the Debtors' schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a Proof of Claim duly filed with the Court, to such address.

Checks issued by the Reorganized Debtors to pay allowed claims shall be null and void if not negotiated within 60 days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Reorganized Debtors by the holder of the Allowed Claim to whom such check originally was issued, prior to the expiration of 120 days from the date of issuance of such check. After such date, the claim shall be deemed disallowed and the monies otherwise payable on account of such claim shall revest in the Reorganized Debtors free and clear of all claims and interests.

In connection with the Plan and any instruments issued in connection therewith, the Reorganized Debtors shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

7. **Exculpations And Releases**

To the maximum extent permitted by law, neither the Debtors, the Estate, nor any of their employees, agents, representatives, or the professionals employed or retained by any of them, whether or not by Bankruptcy Court order (each, a "Released Person"), shall have or incur liability to any person or entity for an act taken or omission made in good faith in connection with or related to the formulation of the Plan, this Disclosure Statement, or a contract, instrument,

release or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein. Each Released Person shall in all respects be entitled to reasonably rely on the advice of counsel with respect to its duties and responsibilities under the Plan.

### 8. <u>Injunctions</u>

The Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to the Plan.

Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability that is discharged or an interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtors, the Estate, or their property on account of any such discharged claims, debts or liabilities or terminated interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (v) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

By accepting distribution pursuant to the Plan, each holder of an allowed claim or allowed interest receiving distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this Section.

### E. Risk Factors

There is no foreseeable risk of default for payments required to be made on the Effective Date of the Plan. However, a risk exists that the projected payments will not be made in

JAURIGUE LAW GROUP<br>114 N. BRAND BLVD., SUITE 200<br>GLENDALE, CALIFORNIA 91203<br>TEL. 818.432.3220 • FAX 888.879.1697

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

the event that the business operations of SunSnow Lodging or Mobile Techie generate less revenues, or increased expenses.  If the Debtors default under the Plan, a risk exists that one or more of the secured creditors will foreclose on a particular property or properties which will negatively affect the Debtors' ability to continue making Plan payments.  Notwithstanding the foregoing, the Debtors are using best efforts to maintain and improve operations and are hopeful that the rental base will maintain, and increase during the term of the Plan period.

**F.      Other Provisions Of The Plan**

**1.      Executory Contracts And Unexpired Leases**

**a.      Assumptions**

Debtors are currently a party, as landlords, to a rental lease on the Maple Property. On the Effective Date, the Debtors intend to assume said lease agreement.

**b.      Rejections**

To the extent that leases or contracts, other than the one discussed above, exist, on the Effective Date, such executory contracts and unexpired leases shall be deemed rejected.  The Confirmation Order shall constitute an Order approving the Debtors' rejection of all such executory contracts and unexpired leases.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WILL BE 30 DAYS AFTER DATE OF ENTRY OF THE CONFIRMATION ORDER. Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

**2.      Changes In Rates Subject to Regulatory Commission Approval**

Debtors are not subject to governmental regulatory commission approval of any rates.

**3.      Retention Of Jurisdiction**

After confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is

legally permissible including for the following purposes.

(a)     To resolve any and all disputes regarding the operation and interpretation of the Plan and the Confirmation Order;

(b)     To determine the validity, classification, or priority of claims and interests upon objection by the Debtors, the Reorganized Debtors, or by other parties in interest with standing to bring such objection or proceeding;

(c)     To determine the extent, validity and priority of any lien asserted against property of the Debtors or property of the Estate;

(d)     To construe and take any action to enforce the Plan, the Confirmation Order, and any other order of the Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the Confirmation Order, and all matters referred to in the Plan, the Confirmation Order, and to determine all matters that may be pending before the Court in this Case on or before the Effective Date with respect to any person or entity related thereto;

(e)     To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

(f)     To determine any request for payment of administrative expenses;

(g)     To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of this case whether before, on, or after the Effective Date;

(h)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(i)     To modify the Plan under section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose;

(j)     Except as otherwise provided in the Plan or the Confirmation Order,

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

to issue injunctions to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order, or the execution or implementation by any person or entity of the Plan or the Confirmation Order;

(k)    To issue such orders in aid of consummation of the Plan or the Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

(l)    To enter a final decree closing this Case.

**G.    <u>Tax Consequences Of The Plan</u>**

The following discussion summarizes certain federal income tax consequences of the Plan to the Debtors.  This summary does not address the federal income tax consequences to creditors or interest holders.  This summary does not address foreign, state or local income tax consequences, estate or gift tax consequences of the Plan.

This summary is based on the Internal Revenue Code of 1986, as amended (the "IRC"), the Treasury Regulations promulgated and proposed thereunder (the "Regulations"), judicial decisions, and published administrative rulings and pronouncements of the Internal Revenue Service (the "IRS") currently in effect.  These authorities are all subject to change, possibly with retroactive effect, and any such change could alter or modify the federal income tax consequences described below.

**THE TAX CONSEQUENCES TO CREDITORS OR INTEREST HOLDERS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH SUCH HOLDER.  CREDITORS MAY RECOGNIZE INCOME OR LOSS AS A RESULT OF THE PLAN.  THIS DISCUSSION DOES NOT CONSTITUTE TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED.  THERE CAN BE NO ASSURANCE THAT THE INTERNAL REVENUE SERVICE WILL NOT CHALLENGE ANY OR ALL OF THE TAX CONSEQUENCES DESCRIBED HEREIN, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE SUSTAINED. ACCORDINGLY,**

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL: 818.432.3220 • FAX 888.879.1697

**EACH CREDITOR IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, FOREIGN OR OTHER TAX CONSEQUENCES OF THE PLAN.**

In general, the Debtors do not expect to incur any substantial tax liability as a result of implementation of the Plan.

The IRC provides that debtors in a chapter 11 bankruptcy case must reduce certain tax attributes by the amount of any cancellation of indebtedness ("COD") income that is realized as a result of the bankruptcy plan, instead of recognizing the income. COD income is the excess of the amount of a taxpayer's indebtedness that is discharged over the amount or value of the consideration exchanged therefor. As a result of the discharge and satisfaction of Claims pursuant to the Plan, the Debtors will realize some COD income, and, accordingly, the Debtors will reduce certain tax attributes by the amount of unrecognized COD income.

Tax attributes that are subject to reduction include net operating losses, capital losses, loss carryovers, certain tax credits and, subject to certain limitations, and the tax basis of property. The reduction of tax attributes occurs after the determination of the Debtors' tax for the taxable year in which the COD income is realized.

Payments of interest, dividends, and certain other payments are generally subject to withholding unless the payee of such payment furnishes such payee's correct taxpayer identification number (social security number or employer identification number) to the payor. The Debtors may be required to withhold the applicable percentage of any payments made to a holder who does not provide its taxpayer identification number. Backup withholding is not an additional tax, but an advance payment that may be refunded to the extent it results in an overpayment of tax.

**THE FOREGOING IS INTENDED TO BE ONLY A SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN, AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FEDERAL, STATE AND LOCAL INCOME AND OTHER TAX**

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN.  SUCH CONSEQUENCES MAY ALSO VARY BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH CREDITOR OR INTEREST HOLDER. ACCORDINGLY, EACH CREDITOR IS STRONGLY URGED TO CONSULT WITH HIS, HER OR ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE AND LOCAL INCOME AND OTHER TAX CONSEQUENCES UNDER THE PLAN.

IV.

**CONFIRMATION REQUIREMENTS AND PROCEDURES**

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims.  The Debtors CANNOT and DO NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm the Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a chapter 7 liquidation, and whether the Plan is feasible.  These requirements are <u>not</u> the only requirements for confirmation.

A. **Who May Vote Or Object**

1. **Who May Object To Confirmation Of The Plan**

Any party in interest may object to the confirmation of the Plan, but, as explained below, not everyone is entitled to vote to accept or reject the Plan.

2. **Who May Vote To Accept/Reject The Plan**

A creditor or interest holder has a right to vote for or against the Plan if that Creditor or interest holder has a Claim which is both (a) allowed or allowed for voting purposes,

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL: 818.432.3220 • FAX 888.879.1697

and (b) classified in an impaired class.

### a.    <u>What Is An Allowed Claim/Interest</u>

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules, the objection or Allows the Claim or interest for voting purposes.

**THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE** was July 2, 2013 for governmental units and May 8, 2013 for all other creditors. A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (i) it is scheduled on the Debtors' schedules and such claim is not scheduled as disputed, contingent or unliquidated, and (ii) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

### b.    <u>What Is An Impaired Claim/Interest</u>

As noted above, an Allowed Claim or interest only has the right to vote if it is in a class that is <u>impaired</u> under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that Class 110% of what they are owed.

In this case, the Debtors believe that all holders of claims in Classes 2, 3, 4, 5, 6, 9, 10, and 11 are impaired and entitled to vote to accept or reject the Plan. Parties who dispute the Debtors' characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Debtors have incorrectly characterized the class.

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL 818.432.3220 • FAX 888.879.1697

### 3.     Who Is Not Entitled To Vote

The following four types of claims are not entitled to vote:  (i) claims that have been disallowed; (ii) claims in unimpaired classes; (iii) claims entitled to priority pursuant to Bankruptcy Code sections 507(a)(1), (a)(2) and (a)(8); and (iv) claims in classes that do not receive or retain any value under the Plan.  Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Bankruptcy Code sections 507(a)(1), (a)(2), and (a)(8) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Bankruptcy Code.  Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.  In this case, the Debtors believe that the holders of the claims in Class 1, 7, and 8, are unimpaired and are not entitled to vote on the Plan.  **EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.**

### 4.     Who Can Vote In More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject the Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5.     Votes Necessary To Confirm The Plan

If impaired classes exist, the Court cannot confirm the Plan unless (a) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (b) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed herein.

### 6.     Votes Necessary For A Class To Accept The Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan.  A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

accept the Plan.

### 7.　　Treatment Of Nonaccepting Classes

As noted above, even if all impaired classes do not accept the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner required by the Bankruptcy Code.  The process by which non-accepting classes are forced to be bound by the terms of the Plan is commonly referred to as a "cramdown."  The Bankruptcy Code allows the Plan to be "crammed down" on non-accepting classes of claims or interests if it meets all consensual requirements except the voting requirements of section 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

### 8.　　Request For Confirmation Despite No Acceptance By Impaired Classes

The Debtors request a cramdown on any impaired classes who do not vote to accept the Plan.

### B.　　Liquidation Analysis

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

In a chapter 7 case, the Debtors' assets are usually sold by a chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims.  Finally, interest holders receive the balance that remains after all creditors are paid, if any.

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL: 818.432.3220 • FAX 888.879.1697

For the Court to be able to confirm the Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a chapter 7 liquidation. The Debtors maintain that this requirement is met here for the reasons discussed below.

**1.    Secured Creditors**

With respect to secured creditors, in a Chapter 7, the Trustee would likely take no action on the properties the Debtors own (the "Properties"), allowing the respective first trust deed holders to foreclose on the Properties. In light of the current economic conditions and the real estate market, it is likely that the foreclosure price will be lower than the current fair market values of the Properties. In such case, pursuant to 11 U.S.C. §506(a), the secured claims would be lower than provided for herein, resulting in a smaller distribution to the secured creditor.

**2.    General Unsecured Creditors**

At this time, the Debtors lack any equity in the Properties. As a result, in the event of a liquidation (either in Chapter 7 or Chapter 11), after taking into consideration costs of sale, there will be no funds available for general unsecured creditors. The Plan, on the other hand, proposes to pay to general unsecured creditors, in the aggregate, $13,204.80 over five years (with monthly payments of $ $698.07 until February 1, 2016 and monthly of $292.23 from February 1, 2016 on). The Debtors submit that this result is far superior to liquidation.

Additionally, the Debtors believe that holders of allowed claims will begin to receive their distributions much faster under the Plan than in a Chapter 7 liquidation as the distribution under the Plan will be made shortly after the Plan is confirmed and the distribution in a Chapter 7 liquidation would not be made until the chapter 7 bankruptcy case was closed, which typically takes years. In Chapter 7, distribution to creditors would be delayed due to, among other things: (a) the setting of a new bar date for the filing of proofs of claim, which would also result in the filing of additional claims and thus reduce the pro rata distribution to creditors, (b) the preparation of the Debtors' final report to the United States Trustee, and (c) the administrative activities of the United States Trustee and the Court's clerk's office in connection with, among

other activities, converting and closing this case. The Debtors therefore believe that holders of allowed claims will receive more under the Plan than they would receive in a Chapter 7 liquidation of the Debtors.

The Debtors have therefore satisfied the "best interest of creditors test" with respect to any claim holder who votes against the Plan. The Debtors conclude that the Plan provides fair and equitable treatment to all classes of creditors and the greatest possible recovery to creditors.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the plan as such creditor or interest holder would receive under a Chapter 7 liquidation of the Debtors. This information is provided by the Debtors.

## ASSETS VALUED AT LIQUIDATION VALUES

## (ESTIMATED AS OF JANUARY 31, 2014)

| ASSETS AT LIQUIDATION VALUE | LIQUIDATION VALUE |
|---|---|
| Cash<br>    Remaining Retainer Balance | $30,000.00<br>$1,052.00 |
| Sunni's Way Property<br>Tyrol 213 Property<br>Maple Property<br>County Road Property<br>Juniper Property<br>Tyrol 214 Property<br>Ironhorse Property | $350,000.00<br>$145,000.00<br>$375,000.00<br>$128,000.00<br>$260,000.00<br>$245,250.00<br>$250,000.00 |
| Total Value | $1,753,250.00 |
| **Total Assets At Liquidation Value:** | **$1,781,906.00** |
| **Less Secured Creditor Recovery:** | $1,781,906.00 (all of the creditors, except for Class 4 claimant, are undersecured) |
| **Less**: Chapter 7 trustee fees and expenses (including professionals retained by the Chapter 7 trustee) | $0 |
| **Less**: Chapter 11 administrative expenses | $48,047.30 |
| **Less:** Priority tax claims | $2,043.78 |
| **Balance for unsecured claims:** | **$0.00** |

JAURIGUE LAW GROUP<br>114 N. BRAND BLVD., SUITE 200<br>GLENDALE, CALIFORNIA 91203<br>TEL. 818.432.3220 • FAX 888.879.1697

% OF CLAIMS WHICH GENERAL UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CHAPTER 7 LIQUIDATION = 0.0%

% OF CLAIMS WHICH GENERAL UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THE PLAN = 1.2 % minimum.

**C.     Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization, of the Debtors or any successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtors will have enough cash on hand on the Effective Date to pay all the claims and expenses which are entitled to be paid on such date. The Debtors maintain that this aspect of feasibility is satisfied because the Debtors' on-going business operations will generate sufficient cash on hand by the Effective Date to pay all the claim and expenses which are entitled to be paid on the Effective Date.

The second aspect considers whether the Reorganized Debtors will have enough cash over the life of the Plan to make the required Plan payments. Attached hereto as **Exhibit "A"** are the Debtors' cash flow projections for the term of the Plan. As set forth in the projections, the Debtors believe that they will be able to make all required Plan payments. Additionally, to the extent that the Debtors have insufficient funds in any one month to make the required payments, the Debtors agree to reduce their profits for that particular month in an amount sufficient to make such payments. The Debtors, therefore, believe that this requirement has been met.

| | |
|---|---|
| Cash Debtors will have on hand by Effective Date | $71,052.00 |
| To Pay: Administrative claims | -$48,047.30 |
| To Pay: Statutory costs & charges | -$0.00 |
| To pay: Other Plan Payments due on Effective Date: | -$7,918.07 |
| Balance after paying these amounts… | $15,086.63 |

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL 818.432.3220 • FAX 888.879.1697

The sources of the cash Debtors will have on hand by the Effective Date, as shown above are:

| | |
|---|---|
| $30,000.00 | Cash in DIP accounts now |
| $1,052.00 | Remaining Retainer Balance |
| +$40,000.00 | Additional cash DIP will accumulate from net earnings between now and Effective Date. |
| +0.00 | Borrowing |
| +0.00 | Capital contributions |
| $71,052.00 | Total |

Debtors have also filed Monthly Operating Reports in this case with the U.S. Bankruptcy Court. YOU ARE ADVISED TO CONSULT WITH YOUR OWN ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.

**V.**

**EFFECT OF CONFIRMATION OF PLAN**

    **A.**    **Binding Effect of Plan**

Confirmation shall bind the Debtors, all creditors, and other parties in interest to the provisions of the Plan whether or not the claim of such creditor is impaired under the Plan and whether or not such creditor has accepted the Plan.

    **B.**    **Revesting Of Property In The Reorganized Debtors**

Except as provided elsewhere herein, the confirmation of the Plan revests all of the property of the Estate in the Reorganized Debtors.

In addition, on the Effective Date, all of the claims against and/or interests in third parties that constitute property of the Estate shall be revested in the Reorganized Debtors. Following the Effective Date, the Reorganized Debtors shall have absolute authority to prosecute, waive, adjust or settle any claims without the need for approval by the Court. Following the Effective Date, the Reorganized Debtors shall have the authority to employ such professionals as

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

they deems necessary to prosecute or defend such claims asserted without the need for Court approval.

Except as otherwise provided herein or in the Confirmation Order, in the event that the Reorganized Debtors shall default in the performance of any of its obligations under the Plan and shall not have cured such a default within thirty (30) days after receipt of written notice of default from the creditor to whom the performance is due, then the entity or individual to whom the performance is due may pursue such remedies as are available at law or in equity. An event of default occurring with respect to one claim shall not be any event of default with respect to any other claim.

**C.**     **Modification Of Plan**

The Debtors may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or re-voting on the Plan.

Pursuant to 11 U.S.C. §1127(e) because the debtors are individuals, the Plan may be modified at any time after confirmation of the Plan, but before the completion of payments under the Plan, whether or not the Plan has been substantially consummated, upon request of the Debtors, the trustee, the OUST, or the holder of an allowed unsecured claim, to—

(1)     increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2)     extend or reduce the time period for such payments; or

(3)     alter the amount of the distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of such claim made other than under the Plan.

Moreover, pursuant to 11 U.S.C. §1127(f)(2) the plan, as modified, shall become the Plan only after there has been disclosure under section 1125, as the Court may direct, notice and a hearing, and such modification is approved.

**D.**      **Post-Confirmation Status Report**

Within 120 days following the entry of the Plan Confirmation Order, the

Reorganized Debtors shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee, the 20 largest unsecured creditors and any secured creditors and priority unsecured creditors entitled to receive distributions under the Plan. Further status reports shall be filed every 120 days and served on the same entities.

### E.     Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the Case under section 1112(b) after the Plan is confirmed if there is a default in performing the Plan. If the Court orders the Case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the chapter 11 estate, and that has not been disbursed pursuant to the Plan, will re-vest in the chapter 7 estate. The automatic stay will be re-imposed upon the re-vested property, but only to the extent that the Court did not previously authorize relief from stay during the Case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

### F.     Post-Confirmation U.S. Trustee Fees

The Reorganized Debtors shall be responsible for the timely payment of all fees incurred after the Effective Date pursuant to 28 U.S.C. § 1930(a)(6).

/././

/././

/././

/././

/././

/././

/././

/././

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL. 818.432.3220 • FAX 888.879.1697

**G.**      <u>**Final Decree**</u>

         Once this estate has been fully administered as referred to in Bankruptcy Rule 3022, the Reorganized Debtors (or other party as the Court shall designate in the Plan Confirmation Order) shall file a motion with the Court to obtain a final decree to close the Case.

DATED: August 15, 2014        Respectfully submitted,
                                       THE JAURIGUE LAW GROUP

By:   ___*/s/ **Nam H. Le**_____

Nam H. Le
Attorneys for Caleb Tector and Stephanie Larson,
Debtors and Debtors in Posssession

DATED: August __15__, 2014



By: _____

Caleb Tector, Debtor

DATED: August __15__, 2014

By: _____

Stephanie Larson, Debtor

JAURIGUE LAW GROUP
114 N. BRAND BLVD., SUITE 200
GLENDALE, CALIFORNIA 91203
TEL 818.432.3220 • FAX 888.879.1697

EXHIBIT "A"

**Projected Monthly Average Income and Expenses**

| Description | Monthly Avg | Basis for Projection |
|---|---|---|
| **Income:** | | |
| Rents and Leases Collected | $2,786.64 | 2/1/13 to 12/31/13 operating report monthly average |
| Mobile Techie | $817.00 | 2/1/13 to 12/31/13 operating report monthly average |
| Stephanie Employment | $5,381.00 | Joint Debtor's employment income is stable |
| SunSnow Management | $8,500.00 | Projections based off SunSnow operations during typical: busy season (See **attached** 2/1/12 to 3/31/12 operating reports); and off season (See 4/1/13 to 7/31/13 operating reports) |
| Miscellaneous Deposits | $359.91 | 2/1/13 to 12/31/13 operating report monthly average |
| Total: | **$17,844.55** | |
| **Expenses:** | | |
| Personal Expenses (Food, Shopping, Necessities, etc.) and Property Insurance | $5,070.09 | 2/1/13 to 12/31/13 operating report monthly average |
| Property, Auto Repairs, Fuel | $433.55 | 2/1/13 to 12/31/13 operating report monthly average |
| Utilities on Properties | $1,186.55 | 2/1/13 to 12/31/13 operating report monthly average |
| Sunni's Way Mortgage | $2,032.00 | 2/1/13 to 12/31/13 operating report monthly average |
| HOA Dues | $1,509.09 | 2/1/13 to 12/31/13 operating report monthly average |
| Tyrol 213 Property Taxes | $103.92 | Escrow payment per stipulation |
| Tyrol 214 Property Taxes | $103.18 | Annual property tax assessment over 12 months |
| County Road Property Taxes | $51.45 | Annual property tax assessment over 12 months |
| Maple Property Road | $314.26 | Escrow payment per stipulation |
| Juniper Property Taxes | $256.55 | Annual property tax assessment over 12 months |
| Total: | **$11,060.64** | |
| **Proposed Plan Payments:** | | |
| Grand County Treasurer | $37.86 | Plan |
| Deutsche Bank (Tyrol 213) | $778.39 | Plan |
| Bank of America (Maple) | $2,070.76 | Plan |
| Green Tree (County Road) | $429.88 | Plan |
| U.S. Bank, N.A. (Maple Road) | $1,294.06 | Plan |
| JP Morgan Chase (Tyrol 214) | $1,354.28 | Plan |
| Schools FCU (2011 VW) | $328.90 | Plan |
| Total: | **$6,294.13** | |

| | | |
|---|---|---|
| **Projected Disposable Income Prior to 2/1/2016** | **$489.78** | |
| **Projected Disposable Income Between 2/1/2016 to 2/1/2017** | **$291.16** | |
| **Projected Disposable Income After 2/1/2017** | **$83.94** | |

# EXHIBIT "B"

1   CHRISTOPHER M. MCDERMOTT (SBN 253411)
2   cmcdermott@piteduncan.com
    TODD S. GARAN (CA SBN 236878)
3   tgaran@piteduncan.com
    GREGORY P. CAMPBELL (CA SBN 281732)
4   gcampbell@piteduncan.com
    PITE DUNCAN, LLP
5   4375 Jutland Dr., Ste. 200
    P.O. Box 19734
6   San Diego, CA 92177-9734
    Telephone: (858) 750-7600
7   Facsimile: (619) 590-1385

8   Attorneys for JPMorgan Chase Bank, N.A.

9

10                  **UNITED STATES BANKRUPTCY COURT**

11        **EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION**

| 12 | In re | Case No. 13-20096 |
|---|---|---|
| 13 | CALEB D TECTOR AND STEPHANIE J LARSON, | D.C. No PD-1 |
| 14 | | Chapter 11 |
| 15 | Debtors. | **STIPULATION RE: TREATMENT OF CLAIM UNDER DEBTORS' PROPOSED CHAPTER 11 PLAN OF REORGANIZATION** |
| 16 | | |
| 17 | | |
| 18 | | **Property Address:** |
| 19 | | 44 Tyrol Lane, Unit 214, Mammoth Lakes, CA 93546 |

20

21        This Stipulation is entered into by and between Secured Creditor, JPMorgan Chase Bank,

22   N.A. ("**Chase**"), by and through its attorneys of record, and Caleb D Tector and Stephanie J Larson,

23   (the "**Debtors**"), by their attorney of record.

24        The property which is the subject of this matter is commonly known as 44 Tyrol Lane, Unit

25   214, Mammoth Lakes, CA 93546 (hereinafter the "**Property**"), which is more fully described in the

26   Deed of Trust attached to the concurrently filed Exhibits as **Exhibit B** and incorporated herein by

27   reference.

28   /././

On November 29, 2006, Debtors, for valuable consideration, made, executed and delivered to Washington Mutual Bank, FA ("**WAMU**") a Note in the principal sum of $325,000.00 (the "**Note**"). Thereafter, WAMU indorsed the Note in blank.

On November 29, 2006, Debtors made, executed and delivered to WAMU a Deed of Trust (the "**Deed of Trust**") granting WAMU a security interest in the Property, which is more fully described in the Deed of Trust. The Deed of Trust was recorded in the official records of the Mono County Recorder's office.

On or about September 25, 2008, WAMU was closed by the Office of Thrift Supervision and the FDIC was named receiver. Pursuant to the terms and conditions of a Purchase and Assumption Agreement between the FDIC as receiver of WAMU and Chase dated September 25, 2008, Chase acquired certain of the assets, including all loans and all loan commitments of WAMU. As a result, on September 25, 2008, Chase became the owner of the loans and loan commitments of WAMU.

On January 3, 2013, Debtors filed a voluntary petition under Chapter 11 of the Bankruptcy Code and were assigned bankruptcy case no. 13-20096.

On April 24, 2013, Debtors filed their Motion to Value Collateral ("**Motion to Value**"). (*See* Docket No. 33).

On August 16, 2013, the court entered a Memorandum Opinion/Decision on Debtors' Motion to Value ("**Order**"). (*See* Docket No. 128). Pursuant to the court's Order, the Property has a fair market value of $245,250.00.

**THE PARTIES STIPULATE AS FOLLOWS:**

1.     Chase shall have a secured claim in the amount of $245,250.00 (the "**Secured Claim**") amortized over thirty (30) years at 5.25% interest per annum in the Debtors' Chapter 11 Plan.

2.     Chase shall have an unsecured claim, plus Chase's attorneys' fees and costs (the "**Unsecured Claim**"). Chase shall receive, in full and final satisfaction of its Unsecured Claim, its pro rata share of the dividend available to general unsecured creditors, which shall be not less than the Debtors' projected disposable income (as defined in section 1325(b)(2)) to be received during the 5 year period beginning on the date that the first payment is due under the Plan, or during the period

1    for which the Plan provides, whichever is longer. Chase's lien related to its Unsecured Claim shall

2    only be avoided if: (1) Debtors' Plan is confirmed; (2) Debtors substantially consummate their Plan

3    and receive a Chapter 11 discharge; and (3) the court enters a final decree. In the event Debtors

4    proceed with a post-confirmation sale or refinance of the Property, Chase shall not be required to

5    release its lien until the Debtors have paid Chase's Secured and Unsecured Claims in accordance

6    with this Stipulation, substantially consummate their Plan, receive a Chapter 11 discharge, and the

7    court enters a final decree.

8        3.      Debtors shall tender regular monthly principal and interest payments in the sum of

9    **$1,354.28** to Chase for the Secured Claim commencing **November 1, 2013**, and continuing on the

10   first day of each month thereafter until all such outstanding amounts under the Secured Claim are

11   paid in full.

12        4.      Debtors shall maintain real property taxes and real property hazard insurance for the

13   Property and provide proof of said insurance to Chase upon request. In the event Chase receives

14   notice that the Debtors have failed to maintain taxes or insurance for the Property Chase reserves its

15   right to advance said funds on the Debtors' behalf pursuant to the terms of the Subject Loan.

16        5.      Debtors shall cure any post-petition escrow advances made by Chase on or before the

17   Effective Date of the Plan.

18        6.      Except as otherwise expressly provided herein, all remaining terms of the Note and

19   Deed of Trust shall govern the treatment of Chase's Secured Claim.

20        7.      In the event of any future default on any of the above-described provisions, inclusive

21   of this Stipulation, Chase shall provide written notice via first class mail to Debtors at P.O. Box 100

22   PMB 583, Mammoth Lakes, CA 93546 and Debtors' attorney of record, Michael Jaurigue at 114 N.

23   Brand Blvd., Suite 200, Glendale, CA 91203, indicating the nature of default. If Debtors fail to cure

24   the default with certified funds after passage of thirty (30) calendar days from the date said written

25   notice is placed in the mail, then Chase shall file a Motion for Relief and Declaration of Default

26   seeking termination of the automatic stay.

27        8.      The acceptance by Chase of a late or partial payment shall not act as a waiver of

28   Chase's right to proceed hereunder.

9.      In the event that Chase is granted relief from the automatic stay, the parties hereby stipulate that the 14-day stay provided by Bankruptcy Rule 4001(a)(3) is waived.

10.      In the event the Debtors default under this Stipulation and Chase forwards a 30-day letter to Debtors, they shall be required to tender $100.00 for each default letter submitted in order to cure the default.

11.      At the request of Chase, the Debtors shall execute such documents and instruments as are necessary to reflect the Debtors as the borrowers of the Secured Claim, and to modify the terms of the obligation to conform with the provisions of the this Stipulation.

12.      The terms of this Stipulation are contingent upon the substantial consummation of the Debtors' confirmed Plan, receipt of a Chapter 11 discharge, and the entry of a final decree. The terms of this Stipulation may not be modified, altered, or changed by the Plan, any confirmation order thereon, any subsequently filed Amended Chapter 11 Plan of Reorganization and confirmation order thereon without the express written consent of the Chase. The terms of this Stipulation shall be incorporated into the Plan and/or any subsequently filed Amended Chapter 11 Plan of Reorganization. In the event of a discrepancy between the terms of the Debtors' Plan and this Stipulation, the provisions of this Stipulation shall control.

13.      The Debtors shall file a Chapter 11 Plan that incorporates the terms of this Stipulation and attach a copy of this Stipulation as an exhibit to the Plan. The Debtors' failure to comply with this provision shall constitute a default under the terms of the Stipulation.

14.      In the event the Debtors' case is dismissed or converted to any other chapter under Title 11 of the United States Bankruptcy Code, Chase shall retain its lien in the full amount due under the Note.

15.      Chase must consent to any sale of the Property prior to the substantial consummation of the Debtors' confirmed Chapter 11 Plan. In the event the Debtors sell the Property or seek to prepay Chase's Secured Claim prior to the substantial consummation of the Debtors' confirmed Chapter 11 Plan, Chase shall retain its lien in the full amount due under the Note.

17.      In the event the Debtors assert that Chase has failed to properly update its internal system to comply with the terms of this Stipulation within a reasonable period of time after an order

- 4 -

1  is entered confirming the Debtors' Chapter 11 Plan of Reorganization, which shall be no less than

2  ninety (90) days, the Debtors shall be required to provide written notice of the alleged lack of

3  compliance to Chase and Chase's counsel of record, Pite Duncan, LLP at 4375 Jutland Drive, Suite

4  200, San Diego, CA 92117, indicting the nature of the alleged lack of compliance. If Chase fails to

5  either remedy the alleged lack of compliance and/or provide an explanation refuting the Debtors'

6  allegation after the passage of ninety (90) days from the date Chase receives said written notice (the

7  "Meet and Confer Period") Debtors may proceed with filing the appropriate motion in bankruptcy

8  court seeking Chase's compliance. However, provided Chase has in good faith sought to remedy

9  Debtors' grievance during the Meet and Confer Period, Debtors shall not request an award of his/her

10  attorneys' fees and costs nor sanctions as a result of filing said motion.

11       18.     This Stipulation shall constitute ballots voting in favor of the Debtors' Chapter 11

12  Plan for Chase's Secured and Unsecured Claims.

13       **IT IS SO STIPULATED:**

14

15  Dated:   10/24/13

16                                              **MASHI SCANLAN**
                                                Attorney for Debtors, Caleb Tector and Stephanie
17                                              Larson

18

19

20                                              **PITE DUNCAN, LLP**

21  Dated:                                      Gregory Campbell    Digitally signed by Gregory Campbell
                                                                    DN: cn=Gregory Campbell, o, ou,
22                                                                  email=gcampbell@piteduncan.com, c=US
                                                                    Date: 2013.10.25 09:15:19 -07'00'
23                                              **GREGORY P. CAMPBELL**

24                                              Attorneys for Creditor JPMorgan Chase Bank, N.A.

25

26

27

28

- 5 -

EXHIBIT "C"

**In re: Caleb Tector and Stephanie Larson**
**CLASS 11 GENERAL UNSECURED CLAIMS**

**Class 11-A**

| | |
|---|---|
| **Citibank, N.A.** Account No. xxxxxx0945 | $   101,494.00 |
| **Green Tree Servicing, LLC** Account No. xxxxxx0069 | $   157,547.69 |
| **JP Morgan Chase Bank, N.A.** Account No. xxxxxx7780 | $   137,097.00 |
| **Bank of America, N.A.** Account No. xxxxxx3532 | $   157,231.00 |
| **JP Morgan Chase Bank, N.A.** Account No. xxxxxx6235 | $    43,519.00 |

**Class 11-A Total**

$       596,888.69

**Class 11-B**

| | |
|---|---|
| **Deutsche Bank National Trust Co.** Account No. xxxxxx1182 | $   103,210.44 |

**Class 11-C**

| | |
|---|---|
| **Bank of America, N.A.** Account No. xxxxxx0306 | $    54,457.48 |

**Class 11-D**

| | |
|---|---|
| **Eugene and Jaqueline Larson** Account No. (None) | $    59,384.43 |

**Class 11-E**

| | |
|---|---|
| **U.S. Bank, N.A.** Account No. xxxxxx5637 | $   166,846.66 |

**Class 11-F**

| | |
|---|---|
| **JP Morgan Chase Bank, N.A.** Account No. xxxxxx6943 | $   142,075.02 |

**Total General Unsecured Claims**          $ 1,122,862.72